**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

ARMENIO HUERRA,

      Petitioner,

   v.

TIMOTHY BUSBY, Warden,

      Respondent.

Case No. 1:11-cv-001911-SKO-HC

ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS (DOC. 1), DIRECTING THE ENTRY OF JUDGMENT FOR RESPONDENT, AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY

Petitioner is a state prisoner proceeding pro se and in forma pauperis with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Pursuant to 28 U.S.C. 636(c)(1), the parties have consented to the jurisdiction of the United States Magistrate Judge to conduct all further proceedings in the case, including the entry of final judgment, by manifesting their consent in writings signed by the parties or their representatives and filed by Petitioner on December 5, 2011, and on behalf of Respondent on December 16, 2011. Pending before the Court is the petition for writ of habeas corpus, which was filed on November 17, 2011.  Respondent filed an answer on February 28, 2012, and Petitioner filed a traverse on April 23,

1

2012.

I.   Jurisdiction

Because the petition was filed after April 24, 1996, the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), the AEDPA applies in this proceeding.  Lindh v. Murphy, 521 U.S. 320, 327 (1997); Furman v. Wood, 190 F.3d 1002, 1004 (9th Cir. 1999).

The challenged judgment was rendered by the Superior Court of the State of California, County of Tulare (TCSC), which is located within the territorial jurisdiction of this Court.  28 U.S.C. §§ 84(b), 2254(a), 2241(a), (d).  Further, Petitioner claims that in the course of the proceedings resulting in his conviction, he suffered violations of his constitutional rights.

Accordingly, the Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 2254(a) and 2241(c)(3), which authorize a district court to entertain a petition for a writ of habeas corpus by a person in custody pursuant to the judgment of a state court only on the ground that the custody is in violation of the Constitution, laws, or treaties of the United States.  Williams v. Taylor, 529 U.S. 362, 375 n.7 (2000); Wilson v. Corcoran, 562 U.S. -, -, 131 S.Ct. 13, 16 (2010) (per curiam).

An answer was filed on behalf of Respondent Timothy Busby, who, pursuant to the judgment, had custody of Petitioner at the Ironwood State Prison (ISP), his institution of confinement at the time the petition and answer were filed.  (Doc. 16.)  Petitioner thus named as a respondent a person who had custody of Petitioner within the meaning of 28 U.S.C. § 2242 and Rule 2(a) of the Rules Governing Section 2254 Cases in the United States District Courts (Habeas

2

Rules).  See <u>Stanley v. California Supreme Court</u>, 21 F.3d 359, 360 (9th Cir. 1994).

Accordingly, the Court concludes it has jurisdiction over the person of the Respondent.

II.  <u>Background</u>

    A.  <u>Procedural Summary</u>

Petitioner was found by a jury to have committed attempted wilful, deliberate, and premeditated murder in violation of Cal. Pen. Code §§ 187(a) and 664 and assault with a deadly weapon in violation of Cal. Pen. Code § 245(a)(1).  The jury further found that Petitioner personally used a deadly weapon within the meaning of Cal. Pen. Code § 12022(b)(1), but it found not true the special allegation that Petitioner had personally inflicted great bodily injury within the meaning of Cal. Pen. Code § 12022.7(a).  The trial court sentenced Petitioner to life in prison with the possibility of parole, plus one year for the deadly weapon enhancement.  (LD 4, 1-5.)

Respondent concedes that the petition before the Court was timely filed and that Petitioner exhausted state court remedies as to his claims, which concern instructional error and the sufficiency of the evidence to support the conviction.  (Doc. 14, 6.)

    B.  <u>Factual Summary</u>

In a habeas proceeding brought by a person in custody pursuant to a judgment of a state court, a determination of a factual issue made by a state court shall be presumed to be correct; the petitioner has the burden of producing clear and convincing evidence to rebut the presumption of correctness.  28 U.S.C. § 2254(e)(1); <u>Sanders v. Lamarque</u>, 357 F.3d 943, 947-48 (9th Cir. 2004).  This

presumption applies to a statement of facts drawn from a state appellate court's decision.  Moses v. Payne, 555 F.3d 742, 746 n.1 (9th Cir. 2009).  The following statement of facts is taken from the opinion of the Court of Appeal of the State of California, Fifth Appellate District (CCA) in People v. Armenio Huerra, case number F059689, filed on April 20, 2011:

**Prosecution case**

The victim, Pedro Ruiz Huerta, testified that he was attending a birthday party for his three-year-old nephew on the day of assault. Huerra arrived at the party shortly after Huerta. Huerra and Huerta shared a rented room in a house; Huerta thought the two were friends.

Huerra arrived at the party very drunk. At the party he drank more beer and was misbehaving. He had a difficult time walking because of his intoxication. Eventually, some of the parents asked Huerta to tell Huerra to leave. Huerta asked Huerra to leave the party because he was acting inappropriately. Huerra said he would be back and walked to his vehicle.

Approximately 10 minutes later, Huerta was holding a beer and talking with his sister when Huerra approached and hit him. Huerra had a knife in his hand. Huerta had seen the knife in Huerra's van the previous day. Huerra swung at Huerta two times, stabbing him once in the abdomen and once in the right arm. The right arm injury occurred when Huerta used his arm to block the second stab attempt, which was aimed at his chest. Huerra then ran from the scene.

Huerta received three stitches on his arm and two on his abdomen as a result of the injuries inflicted by Huerra. Huerta denied trying to strike Huerra. Huerta also denied making any rude comments to Huerra.

Octaviano Alejandro, Jr., a security guard at a nearby bar, testified that Huerra came by the bar later that night. He had blood on his shirt and Alejandro would not allow him to enter until after he cleaned up. Huerra left and returned a short while later with a washed face and clean shirt. Alejandro spotted a steak knife in Huerra's

4

waist band and told Huerra he could not bring the knife
into the bar. Huerra gave Alejandro the knife and entered
the bar. When asked about the knife, Huerra told Alejandro
that "they" would not mess with him anymore. Alejandro
spotted some blood on the knife and threw it away. About
15 minutes later, Huerra got into an argument with another
customer and Alejandro forced Huerra to leave. Alejandro
eventually retrieved the knife and gave it to a police
officer.

After Huerra was forced to leave the bar, he called for
emergency assistance to regain entrance into the bar.
Deputy Sheriff Francisco Perez responded to Huerra's call.
Huerra obviously had been drinking, but was able to
communicate. Huerra had red, watery eyes, smelled of
alcohol, and had poor balance. Perez noticed that Huerra
was dressed similarly to the assailant from three hours
earlier, so he detained him.

Deputy Sheriff Todd Bruce responded to the scene of the
assault, arriving at 9:20 p.m. He was later dispatched to
the bar where Huerra had been detained, arriving at 12:15
a.m. Bruce described the knife recovered from Huerra as a
paring knife with a blade of approximately three inches.

Huerra was transported to the local sheriff's substation
where he was interviewed. The interview began at
approximately 1:00 a.m. At that time, Huerra was
intoxicated, but able to walk normally. He had red, watery
eyes and smelled of alcohol. He was able to communicate,
appeared to understand the questions posed to him, and
responded in an appropriate manner. The interview was not
recorded because the sheriff's substation did not have any
recording equipment.

Perez interpreted for Bruce while Bruce interviewed
Huerra. Perez testified that Huerra appeared coherent
during the interview and gave appropriate responses to the
questions asked.

Huerra explained that the ladies at the party gave him a
lot of attention when he arrived. This attention
apparently made Huerta jealous. Huerta made disparaging
remarks about Huerra, claiming Huerra had no money and was
nothing. This made Huerra angry, so he confronted Huerta
and asked Huerta if he had a problem with him. Huerta said
that he did have a problem with him, so Huerra challenged

5

Huerta to a fight. Huerta agreed to fight. Huerta asked
Huerta if he wanted to be killed, and Huerta responded
affirmatively. Huerra said he went to his van to get the
knife so he could kill Huerta. After retrieving the knife,
Huerra returned to the party and confronted Huerta. Huerra
asked Huerta if he had a problem with him. When Huerta
responded affirmatively, Huerra asked Huerta if he wanted
to be killed. Huerta then lunged at Huerra. Huerra
responded by stabbing Huerta.

Huerra told Perez that he retrieved the knife because he
wanted to kill Huerta by stabbing him in the heart. Huerra
stated he stabbed Huerta twice and then the two rolled on
the ground. Huerra ran from the scene when he saw several
people approaching him. Huerra stated he felt bad for what
he had done, but at the time he wanted to kill Huerta.

***Defense case***

Jennifer Kearney testified that blood was drawn from
Huerra at 3:25 a.m. and was tested. His blood-alcohol
content from the sample was 0.18 percent. Based on that
information, and assuming Huerra stopped all alcohol
intake at 9:30 p.m., Kearney concluded that Huerra's
blood-alcohol content at 10:00 p.m. would have been in the
range of 0.26 to 0.28 percent.

(LD 4, 2-4.)

III.   <u>Sufficiency of the Evidence of Intent to Kill</u>

Petitioner argues that the evidence was insufficient to support

a conviction of attempted murder requiring intent to kill because

there was no evidence of a specific intent to kill at the time of

commission of the overt act that manifested the attempt.  Instead,

Petitioner intended at most a wounding, an assault, or a small

fight, as shown by his stabbing the victim, inflicting a wound that

took only two stitches, and desisting after two ineffectual

attempts.  The jury rejected a great bodily injury finding.

Petitioner contends that the evidence supports at most an inference

that he was reckless.  Petitioner's admission to law enforcement

that he had wanted to kill the victim was unreliable evidence because it was made when Petitioner was intoxicated, and it was not recorded.

A.   Standard of Decision and Scope of Review

Title 28 U.S.C. § 2254 provides in pertinent part:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Clearly established federal law refers to the holdings, as opposed to the dicta, of the decisions of the Supreme Court as of the time of the relevant state court decision. Cullen v. Pinholster, - U.S. -, 131 S.Ct. 1388, 1399 (2011); Lockyer v. Andrade, 538 U.S. 63, 71 (2003); Williams v. Taylor, 529 U.S. 362, 412 (2000).

A state court's decision contravenes clearly established Supreme Court precedent if it reaches a legal conclusion opposite to, or substantially different from, the Supreme Court's or concludes differently on a materially indistinguishable set of facts. Williams v. Taylor, 529 U.S. at 405-06. The state court

7

need not have cited Supreme Court precedent or have been aware of

it, "so long as neither the reasoning nor the result of the state-

court decision contradicts [it]." Early v. Packer, 537 U.S. 3, 8

(2002).  A state court unreasonably applies clearly established

federal law if it either 1) correctly identifies the governing rule

but then applies it to a new set of facts in an objectively

unreasonable manner, or 2) extends or fails to extend a clearly

established legal principle to a new context in an objectively

unreasonable manner.  Hernandez v. Small, 282 F.3d 1132, 1142 (9th

Cir. 2002); see, Williams, 529 U.S. at 407.  An application of

clearly established federal law is unreasonable only if it is

objectively unreasonable; an incorrect or inaccurate application is

not necessarily unreasonable.  Williams, 529 U.S. at 410.  A state

court's determination that a claim lacks merit precludes federal

habeas relief as long as it is possible that fairminded jurists

could disagree on the correctness of the state court's decision.

Harrington v. Richter, 562 U.S. -, 131 S.Ct. 770, 786 (2011).  Even

a strong case for relief does not render the state court's

conclusions unreasonable.  Id.

To obtain federal habeas relief, a state prisoner must show

that the state court's ruling on a claim was "so lacking in

justification that there was an error well understood and

comprehended in existing law beyond any possibility for fairminded

disagreement."  Id. at 786-87.  The § 2254(d) standards are "highly

8

deferential standard[s] for evaluating state-court rulings" which require that state court decisions be given the benefit of the doubt, and the Petitioner bear the burden of proof. Cullen v. Pinholster, 131 S.Ct. at 1398. Habeas relief is not appropriate unless each ground supporting the state court decision is examined and found to be unreasonable under the AEDPA. Wetzel v. Lambert, --U.S.--, 132 S.Ct. 1195, 1199 (2012).

In assessing under section 2254(d)(1) whether the state court's legal conclusion was contrary to or an unreasonable application of federal law, "review... is limited to the record that was before the state court that adjudicated the claim on the merits." Cullen v. Pinholster, 131 S.Ct. at 1398. Evidence introduced in federal court has no bearing on review pursuant to § 2254(d)(1). Id. at 1400. Further, 28 U.S.C. § 2254(e)(1) provides that in a habeas proceeding brought by a person in custody pursuant to a judgment of a state court, a determination of a factual issue made by a state court shall be presumed to be correct; the petitioner has the burden of producing clear and convincing evidence to rebut the presumption of correctness. A state court decision on the merits based on a factual determination will not be overturned on factual grounds unless it was objectively unreasonable in light of the evidence presented in the state proceedings. Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

With respect to each claim, the last reasoned decision must be

identified in order to analyze the state court decision pursuant to

28 U.S.C. § 2254(d)(1).  Barker v. Fleming, 423 F.3d 1085, 1092 n.3

(9th Cir. 2005); Bailey v. Rae, 339 F.3d 1107, 1112-13 (9th Cir.

2003).

   B.   The State Court Decision

   Here, the CCA issued an unpublished, reasoned opinion affirming

the judgment.  (LD 4.)  Petitioner then raised the issue in a

petition for review filed in the California Supreme Court (CSC),

which summarily denied review without a statement of reasoning or

authority on June 29, 2011.  (LD 5, LD 6.)

   Here, the CCA's opinion on appeal was the last reasoned

decision in which the state court adjudicated Petitioner's claims on

the merits.  Where there has been one reasoned state judgment

rejecting a federal claim, later unexplained orders upholding that

judgment or rejecting the same claim are presumed to rest upon the

same ground.  Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).  This

Court will thus "look through" the unexplained decision of the CSC

to the CCA's last reasoned decision as the relevant state court

determination.  Id. at 803-04; Taylor v. Maddox, 366 F.3d 992, 998

n.5 (9th Cir. 2004).

   The pertinent portion of the CCA's opinion is as follows:

**I. Sufficiency of the Evidence**

Huerra challenges the sufficiency of the evidence in two
respects. First, he argues there was insufficient evidence
that he intended to kill Huerta. Second, he argues there
was insufficient evidence that the assault was committed
willfully and with premeditation and deliberation.

*Standard of review*

Challenges to a judgment based on insufficient evidence are reviewed under well-established rules. We review the whole record to determine whether any rational trier of fact could have found the essential elements of the crime or special circumstance beyond a reasonable doubt. (*People v. Maury* (2003) 30 Cal.4th 342, 403.) The record must disclose substantial evidence to support the verdict, i.e., evidence that is reasonable, credible, and of solid value, such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. (*Id.* at p. 396.) In applying this test, we review the evidence in the light most favorable to the prosecution and presume in support of the judgment the existence of every fact the jury reasonably could have deduced from the evidence. (*People v. Boyer* (2006) 38 Cal.4th 412, 480.) "Conflicts and even testimony [that] is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends. [Citation.] We resolve neither credibility issues nor evidentiary conflicts; we look for substantial evidence. [Citation.]" (*Maury*, at p. 403.) A reversal for insufficient evidence "is unwarranted unless it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support'" the jury's verdict. (*People v. Bolin* (1998) 18 Cal.4th 297, 331 (*Bolin*).)

The same standard governs in cases where the prosecution relies primarily on circumstantial evidence. (*Maury, supra*, 30 Cal.4th at p. 396.) We "must accept logical inferences that the jury might have drawn from the circumstantial evidence. [Citation.]" (*Ibid.*) "Although it is the jury's duty to acquit a defendant if it finds the circumstantial evidence susceptible of two reasonable interpretations, one of which suggests guilt and the other innocence, it is the jury, not the appellate court that must be convinced of the defendant's guilt beyond a reasonable doubt. [Citation.]" (*People v. Kraft* (2000) 23 Cal.4th 978, 1053-1054.) Where the circumstances reasonably justify the trier of fact's findings, a reviewing court's conclusion that the circumstances also might be reconciled reasonably with a contrary finding is not grounds for reversing the judgment. (*Id.* at p. 1054.)

*Intent to kill*

Huerra claims there was insufficient evidence that he intended to kill Huerta. To sustain a conviction for attempted murder, the prosecution was required to prove beyond a reasonable doubt that Huerra intended to kill Huerta, and that he committed a direct but ineffectual act toward accomplishing that goal. (*People v. Stone* (2009) 46 Cal.4th 131, 136.) "The jury may infer a defendant's specific intent to commit a crime from all of the facts and circumstances shown by the evidence. (See *People v. Bloom* (1989) 48 Cal.3d 1194, 1208 ['Evidence of a defendant's state of mind is almost inevitably circumstantial, but circumstantial evidence is as sufficient as direct evidence to support a conviction .'].)" (*People v. Lindberg* (2008) 45 Cal.4th 1, 27.)

The circumstantial evidence suggesting Huerra intended to kill Huerta was strong. After being asked to leave the party, Huerra retrieved a knife from his vehicle. He returned to the party and stabbed Huerta in the abdomen. He then attempted to stab Huerta in the chest, but was prevented from doing so when Huerta blocked the attempt with his arm. These acts logically lead to the inference that Huerra intended to kill Huerta.

Huerra argues that these acts do not suggest an intent to kill because he stabbed at Huerta only two times. He suggests that if he had intended to kill Huerta, he would have stabbed him repeatedly. This argument, however, simply asks us to draw a different inference from these facts than that which supports the judgment. The standard of review, however, requires that we draw every logical inference that the jury may have drawn from the evidence. This evidence amply supports the logical inference that Huerra intended to kill Huerta.

Not only was the jury provided with strong circumstantial evidence to support the inference that Huerra intended to kill Huerta, there was direct evidence of Huerra's intent. In his statements to the police, Huerra stated several times that he intended to kill Huerta when he returned to the party with the knife.

Huerra asks us to ignore his statements for two reasons, neither of which are persuasive. First, Huerra argues his

12

statements were unreliable because he was intoxicated when he was interviewed. This argument is not supported by logic or the record. While it is undisputed that Huerra was intoxicated when he was interviewed, both officers testified that Huerra appeared coherent and responded appropriately to the questions asked of him. Simply because he was intoxicated does not mean that he would be unable to tell the truth. Significantly, the only testimony in the record on the issue of the effect of intoxication on an individual suggested that intoxication lowered an individual's inhibitions.FN2

> FN2. Huerra's expert witness, Kearney, testified that intoxication generally will lower a person's inhibitions, exaggerate emotions, and may cause a person to do things he or she normally would not do.

Thus, intoxication may have lowered Huerra's inhibitions and may have led him to overreact when Huerra asked him to leave the party. These lowered inhibitions, however, also may have led Huerra to provide truthful and incriminating statements to the police that he may not have made if he had not been intoxicated. Nothing in the record suggests that simply because Huerra was intoxicated, his statements were untruthful or unreliable.

Second, Huerra asks us to ignore his statements because they were not recorded. The jury was instructed that incriminating statements made by Huerra that were not recorded or written should be viewed with caution. (CALCRIM No. 358.) Presumably, the jury followed this instruction. (*People v. Stitely* (2005) 35 Cal.4th 514, 559.) We review the record, however, in the light most favorable to the judgment. Under this standard, we must presume the jury viewed Huerra's statements with caution, but nonetheless found them to be credible. The combination of circumstantial evidence and direct evidence provided overwhelming evidence that Huerra intended to kill Huerta.

(LD 4, 5-8.)

    C.  <u>Analysis</u>

To determine whether a conviction violates the constitutional guarantee of due process of law because of insufficient evidence, a

13

federal court ruling on a petition for writ of habeas corpus must determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 319, 20-21 (1979); Windham v. Merkle, 163 F.3d 1092, 1101 (9th Cir. 1998); Jones v. Wood, 114 F.3d 1002, 1008 (9th Cir. 1997).

All evidence must be considered in the light most favorable to the prosecution.  Jackson, 443 U.S. at 319; Jones, 114 F.3d at 1008. It is the trier of fact's responsibility to resolve conflicting testimony, weigh evidence, and draw reasonable inferences from the facts; thus, it must be assumed that the trier resolved all conflicts in a manner that supports the verdict.  Jackson v. Virginia, 443 U.S. at 319; Jones, 114 F.3d at 1008.  The relevant inquiry is not whether the evidence excludes every hypothesis except guilt, but rather whether the jury could reasonably arrive at its verdict.  United States v. Mares, 940 F.2d 455, 458 (9th Cir. 1991). Circumstantial evidence and the inferences reasonably drawn therefrom can be sufficient to prove any fact and to sustain a conviction, although mere suspicion or speculation does not rise to the level of sufficient evidence.  United States v. Lennick, 18 F.3d 814, 820 (9th Cir. 1994); United States v. Stauffer, 922 F.2d 508, 514 (9th Cir. 1990); see Jones v. Wood, 207 F.3d at 563.  The court must base its determination of the sufficiency of the evidence from a review of the record.  Jackson at 324.

The Jackson standard must be applied with reference to the substantive elements of the criminal offense as defined by state law.  Jackson, 443 U.S. at 324 n.16; Windham, 163 F.3d at 1101. However, the minimum amount of evidence that the Due Process Clause requires to prove an offense is purely a matter of federal law. Coleman v. Johnson, - U.S. -, 132 S.Ct. 2060, 2064 (2012) (per curiam).  For example, under Jackson, juries have broad discretion to decide what inferences to draw and are required only to draw reasonable inferences from basic facts to ultimate facts.  Id.

Further, under the AEDPA, federal courts must apply the standards of Jackson with an additional layer of deference.  Coleman v. Johnson, - U.S. -, 132 S.Ct. 2060, 2062 (2012); Juan H. v. Allen, 408 F.3d 1262, 1274 (9th Cir. 2005).  This Court thus asks whether the state court decision being reviewed reflected an objectively unreasonable application of the Jackson standard to the facts of the case.  Coleman v. Johnson, 132 S.Ct. at 2062; Juan H. v. Allen, 408 F.3d at 1275.  The determination of the state court of last review on a question of the sufficiency of the evidence is entitled to considerable deference under 28 U.S.C. § 2254(d).  Coleman v. Johnson, 132 S.Ct. at 2065.

Here, the CCA articulated legal standards for reviewing the sufficiency of evidence to support a conviction that are consistent with the Jackson standard.  Further, the CCA reasonably applied the Jackson standard in determining that although other inferences could conceivably have been drawn from the evidence, it would be presumed that the jury drew inferences that supported the judgment, and those

inferences were rational in light of the evidence in the record. State law required proof of intent to kill, which the CCA reasonably found to have been inferred from fact that Petitioner left the party, retrieved a knife from his vehicle, returned to the party after a substantial interval of time, stabbed the victim in the abdomen, attempted to stab him in the chest, and retreated when the attempt at the chest was blocked by the victim's arm.  The nature of the weapon chosen and the fact that serious bodily injury was ultimately not inflicted might warrant an inference of intent to inflict some lesser injury, but the CCA reasonably applied <u>Jackson</u> in concluding that the jury reasonably found to the contrary.

The state court reasonably relied on Petitioner's statement that he had intended to kill the victim when he returned to the party with the knife because although he exhibited some signs of intoxication when he was questioned, Petitioner appeared to be coherent and responded appropriately during the questioning.  The failure to record the statement was due to a lack of recording equipment, and the jury was instructed to view the unrecorded statement with caution.  Under the circumstances, a rational finder of fact could have found that the Petitioner admitted that he harbored the intent to kill at the time of the overt act of the attempt.

In sum, the state court's decision on the sufficiency of the evidence of intent to kill was not contrary to, or an unreasonable application of, clearly established federal law.  Accordingly, Petitioner's claim that the evidence of intent to kill was insufficient will be denied.

///

IV.   <u>Sufficiency of the Evidence of Attempted Wilful, Deliberate, and Premeditated Murder</u>

Petitioner contends that the evidence was insufficient to support a conviction of attempted wilful, deliberate, and premeditated murder, a form of first degree murder.  Petitioner relies on <u>People v. Anderson</u>, 70 Cal.2d 15, 26-27 (1968), in which it was held that three categories of evidence are relevant to resolving the issue of premeditation and deliberation: planning activity, manner of killing, and motive.  Using the <u>Anderson</u> test, Petitioner argues he picked a small paring knife which was an ineffective weapon; there was no evidence of planning because the incident came in reaction to an argument among friends, and the fact that Petitioner left for his car and returned in ten to twenty minutes to attack the victim is consistent with Petitioner's position that the victim invited him to fight and thus does not constitute planning; and the random nature of the attack precludes a finding of motive.  Thus, Petitioner contends that sufficient evidence of deliberation and premeditation is lacking.

A.   <u>The State Court Decision</u>

The pertinent portion of the CCA's decision is as follows:

***Willful, deliberate, and premeditated murder***

The information alleged that the assault was committed willfully, deliberately, and with premeditation, thus making the crime attempted murder in the first degree. The jury found this allegation true. Huerra argues this finding was not supported by substantial evidence.

17

When reviewing a finding that a defendant's actions were done willfully, deliberately, and with premeditation, we apply well-established standards. "In *People v. Anderson* [(1968) 70 Cal.2d 15, 26–27], we identified three categories of evidence relevant to resolving the issue of premeditation and deliberation: planning activity, motive, and manner of killing. However, as later explained in *People v. Pride* (1992) 3 Cal.4th 195, 247: '*Anderson* does not require that these factors be present in some special combination or that they be accorded a particular weight, nor is the list exhaustive. *Anderson* was simply intended to guide an appellate court's assessment whether the evidence supports an inference that the killing occurred as the result of preexisting reflection rather than unconsidered or rash impulse. [Citation.]' Thus, while premeditation and deliberation must result from ' "careful thought and weighing of considerations"' [citation], we continue to apply the principle that '[t]he process of premeditation and deliberation does not require any extended period of time. "The true test is not the duration of time as much as it is the extent of the reflection. Thoughts may follow each other with great rapidity and cold, calculated judgment may be arrived at quickly...." [Citations.]' [Citation.]" (*Bolin, supra*, 18 Cal.4th at pp. 331–332.)

Huerra argues that none of the *Anderson* factors was present in this case. His argument, however, ignores the standard of review. We repeat, we review the evidence in the light most favorable to the judgment, drawing all inferences the jury reasonably could have drawn from the evidence.

Applying the correct standard of review, it is clear that the finding was supported by substantial evidence. While true that Huerra did not plan for days how he would assault Huerta, there was ample evidence that he planned the assault. Huerta testified that he asked Huerra to leave the party because Huerra was acting inappropriately. Huerra left and returned about 10 minutes later. Without warning, Huerra stabbed Huerta twice, and then ran from the scene.

Huerra's statement to the police was more incriminating. He told officers that he became upset with Huerta because Huerta was denigrating him and told him to leave the party. Huerra challenged Huerta to a fight and even asked

18

Huerta if he wanted to die. Huerta then left the party, went to his van, obtained the knife (which he remembered was in the van), and approached Huerta. Huerta lunged at Huerra, and Huerra stabbed him.

The jury also heard the testimony of Alejandro, the security guard. Alejandro testified that when questioned about the knife, Huerra said that "they" would not mess with him anymore. Huerra also told officers that he wanted to kill Huerta.

From this testimony, the jury logically could have concluded that Huerra became angry when Huerta asked him to leave the party. Huerra decided to attack Huerta and went to his van to obtain a weapon. He knew he had a knife in the van and he retrieved it with the express intent of killing Huerta. Huerra then returned to the party and carried out his plan to kill Huerta. This evidence was more than adequate to establish planning and premeditation by Huerra.

Huerra also claims there was no evidence of motive. We disagree. Huerra stated several times during his interview with police officers that he was from Guatemala and that men from Guatemala knew how to kill. Alejandro also testified to Huerra's statement that Huerta would know not to mess with Huerra anymore. The jury logically could have inferred from this evidence that Huerra's pride was offended when Huerta made disparaging remarks to him and asked him to leave the party and that he, Huerra, had to defend his honor as a matter of national pride.

(LD 4, 8-10.)

    B.  Analysis

    The CCA determined that under state law, the Anderson

categories of evidence are not exclusive.  Pre-existing reflection,

careful thought, and weighing of considerations are required for

premeditation and deliberation, but the process does not require an

extended period of time due to the ability of a person to think and

exercise a calculated judgment rapidly; rather, the test is the

extent of the reflection.  (LD 4, 9.)

19

This Court accepts a state court's interpretation of state law. Langford v. Day, 110 F.3d 1180, 1389 (9th Cir. 1996). In a habeas corpus proceeding, this Court is bound by the California Supreme Court's interpretation of California law unless the interpretation is deemed untenable or a veiled attempt to avoid review of federal questions. Murtishaw v. Woodford, 255 F.3d 926, 964 (9th Cir. 2001). Here, there is no indication that the state court's interpretation of state law was associated with an attempt to avoid review of federal questions. Thus, this Court is bound by the state court's interpretation and application of state law.

The CCA reasonably applied the Jackson standard in concluding that the finding of attempted wilful, deliberate, and premeditated murder was supported by evidence that Petitioner left the party, returned ten minutes later with a knife he obtained from his vehicle, stabbed the victim twice without warning, and then fled -- all of which showed planning. Further, the state court reasonably concluded that the motive was defense of his honor after suffering an offense to his pride from the victim's disparaging remarks. A rational finder of fact could conclude that although Petitioner was intoxicated, his behavior showed the necessary deliberation and premeditation. The state court's decision was not contrary to, or an unreasonable application of, clearly established federal law.

Accordingly, Petitioner's claim that the evidence was insufficient to show attempted wilful, deliberate, and premeditated murder will be denied.

V. Jury Instruction on Intoxication

Petitioner argues he was deprived of a defense because there was evidence that Petitioner was interviewed by the police while he

20

was highly intoxicated, yet the trial court instructed the jury not to consider Petitioner's intoxication except with respect to the elements of intent to kill, deliberation, and premeditation. Petitioner contends that the evidence should have been considered by the jury in assessing the viability of Petitioner's statement to police because under state law, restrictions on the consideration of intoxication imposed by Cal. Pen. Code § 22 do not apply to the evaluation of the credibility of a witness's statement.  Petitioner contends that the trial court erred in failing to give an instruction on the defense theory, which was that Petitioner was intoxicated when he spoke to police and was bragging.  Further, although Petitioner's statement may not have been involuntary, it was unreliable.  Finally, the instruction relieved prosecution of the burden of proof beyond a reasonable doubt.  It was fundamentally unfair and constituted a violation of due process of law.

A.   The State Court Decision

The pertinent portion of the CCA's decision is as follows:

**II. Jury Instruction on Intoxication**

Huerra undisputedly was intoxicated at the time of the assault and when he was interviewed by officers. Accordingly, the trial court instructed the jury with CALCRIM No. 625 as follows:

> "You may consider evidence, if any, of the defendant's voluntary intoxication only in a limited way. You may consider that evidence only in deciding whether the defendant acted with an intent to kill or that the defendant acted with deliberation and premeditation.
>
> "A person is voluntarily intoxicated if he or she becomes intoxicated by willingly using any intoxicating drug, drink, or other substance, knowing that it could produce an intoxicating

effect or willingly assuming the risk of the
effect.

"You may not consider evidence of voluntary
intoxication for any other purpose."

Huerra contends the trial court erroneously limited the
consideration of his voluntary intoxication to the mental
state required for attempted murder. He argues the jury
should have been allowed to consider his intoxication when
evaluating the reliability of the statements he gave to
officers.

Huerra's argument can be summarized as follows. His
intoxication was relevant to the statements he made during
the interview with officers because it could have impacted
the credibility and trustworthiness of the statements.
Since all relevant evidence is admissible (Evid.Code, §
350), the jury should have been allowed to consider the
evidence for that purpose. The instruction limiting the
use of his intoxication, however, precluded the jury from
considering his intoxication when evaluating his
statements to the officers.

There are several flaws in Huerra's argument. First, both
officers testified that Huerra was coherent and responded
appropriately to the questions posed.

Second, there is nothing in the record to suggest that
simply because Huerra was intoxicated he was unable to
tell the truth. The only witness to testify on the subject
said the intoxication reduces inhibitions, a
characteristic that in this case made it more likely that
Huerra would have been truthful than deceitful.

Third, the only case on point cited by Huerra does not
support his position. Huerra cites to pages 1136 and 1137
of *People v. Mendoza* (1998) 18 Cal.4th 1114. These pages
are part of the concurring opinion of Justice Mosk and are
not part of the majority opinion. Justice Mosk did cite
four cases, but those cases each stand for a different
proposition than that advanced by Huerra.
In *People v. Barnett* (1976) 54 Cal.App.3d 1046 and *People
v. Haydon* (1912) 18 Cal.App. 543, the issue was the
intoxication of a witness during trial. *Barnett* held that
the trial court erred in refusing the defendant's
requested instruction that informed the jury it could

22

consider a witness's intoxication at the time of trial when assessing the testimony. (*Barnett*, at p. 1052.) *Haydon* addressed the propriety of questions propounded to a witness about whether he was intoxicated while testifying.

In *People v. Singh* (1937) 19 Cal.App.2d 128 and *People v. Salladay* (1913) 22 Cal.App. 552, the issue addressed was the intoxication of the witness at the time of the events to which he was testifying. *Singh* held that the trial court erred in precluding questions about whether a witness was intoxicated at the time of the events because such testimony is relevant to the credibility of the witness. (*Singh*, at p. 129.) In *Salladay* the issue was whether the trial court improperly sustained objections to questions about whether a witness was intoxicated at the time of the event in question. The court acknowledged that intoxication of a witness is relevant because intoxication can interfere with a person's "power of perception, the accuracy of his deductions and the integrity of his memory." (*Salladay*, at p. 555.) These cases do not suggest that the truthfulness of a witness is suspect simply because he was intoxicated at the time of the event.

Fourth, Huerra did not object to the instruction as given, thus resulting in a forfeiture of the argument.

Finally, even if there is merit to the argument, Huerra cannot establish that the error was prejudicial. His statements to police, while incriminating, also provided the only exculpatory evidence offered in his defense. Huerra told officers that he stabbed at Huerta after Huerta lunged at him. Huerra also told officers that Huerta agreed to fight and provoked him.

Moreover, Huerra's statements generally were consistent with that of Huerta, indicating that Huerra's memory of the events was not influenced by his intoxication. Huerra admitted arriving at the party intoxicated, being asked to leave by Huerta, going to his vehicle to retrieve the knife, and then returning to confront Huerta. Huerra's statement is incriminating because he admitted to the officers he intended to kill Huerta. It is incongruous to suggest that Huerra would correctly recall the sequence of events but lie about his intent.

Also, there was no evidence that Huerra's actions were
motivated by anything other than an alcohol-fueled need to
seek revenge for his wounded pride. According to Huerra,
Huerta spoke to him in an offensive manner, and Huerra
needed, as a Guatemalan, to take action for the slight. It
also was undisputed that Huerra left the party and
returned at least 10 minutes later with a knife and
assaulted Huerta.

These facts can lead to only one logical conclusion:
Huerra decided he had to prove his manhood by seriously
harming Huerta. The decision to return with a knife
established that merely inflicting physical harm was
insufficient in Huerra's mind. If physical harm was his
only intent, then he merely could have fought him.
Obtaining the knife suggests that Huerra wanted to cause
deadly harm. These facts and inferences strongly suggest
an intent to kill after deliberation and premeditation.

Finally, the jury was well aware of Huerra's intoxication,
as virtually every witness testified that Huerra was
intoxicated. The jury's verdict establishes that it
concluded Huerra's intoxication did not preclude him from
forming the mental states of deliberation, premeditation,
and intent to kill. It is unlikely that the jury would
have rejected Huerra's admissions when he was less
intoxicated at the time he spoke with the officers,
especially since both officers testified to his coherence
at the time of the interview. Under any standard of
review, the failure to instruct the jury that it could
consider Huerra's intoxication when evaluating his
statements to the officers did not cause Huerra any
prejudice.

(LD 4, 10-13.)

        B.   Analysis

        The only basis for federal collateral relief for instructional

error is that the infirm instruction or the lack of instruction by

itself so infected the entire trial that the resulting conviction

violates due process.  Estelle v. McGuire, 502 U.S. 62, 71-72

(1991); Cupp v. Naughten, 414 U.S. 141, 147 (1973); see Donnelly v.

DeChristoforo, 416 U.S. 637, 643 (1974) (noting that it must be

established not merely that the instruction is undesirable, erroneous or even "universally condemned," but that it violated some right guaranteed to the defendant by the Fourteenth Amendment).

The instruction may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record. Estelle, 502 U.S. at 72. In reviewing an ambiguous instruction, it must be determined whether there is a reasonable likelihood that the jury applied the challenged instruction in a way that violates the Constitution. Estelle, 502 U.S. at 72-73 (reaffirming the standard as stated in Boyde v. California, 494 U.S. 370, 380 (1990)). The Court in Estelle emphasized that the Court had very narrowly defined the category of infractions that violate fundamental fairness, and that beyond the specific guarantees enumerated in the Bill of Rights, the Due Process Clause has limited operation. Id. at 72-73.

The Due Process Clause of the Fourteenth Amendment and the Compulsory Process Clause and Confrontation Clause of the Sixth Amendment require that criminal defendants be afforded a meaningful opportunity to present a complete defense. Crane v. Kentucky, 476 U.S. 683, 690 (1986); California v. Trombetta, 467 U.S. 479, 485 (1984). The Supreme Court has characterized its cases as not recognizing a generalized constitutional right to have a jury instructed on a defense available under the evidence under state law. See Gilmore v. Taylor, 108 U.S. 333, 343 (1993). When habeas is sought under 28 U.S.C. § 2254, a failure to instruct on the defense theory of the case constitutes error if the theory is legally sound and evidence in the case makes it applicable. Clark v. Brown, 450 F.3d 898, 904 (9th Cir. 2006); see Mathews v. United

States, 485 U.S. 58, 63 (1988) (reversing a conviction and holding that even if a defendant denies one or more elements of the crime, he is entitled to an entrapment instruction when there is sufficient evidence from which a reasonable jury could find entrapment, and the defendant requests such an instruction).

The harmless error analysis applies to instructional errors so long as the error at issue does not categorically vitiate all the jury's findings.  Hedgpeth v. Pulido, 555 U.S. 57, 61 (2008) (citing Neder v. United States, 527 U.S. 1, 11 (1999) (quoting in turn Sullivan v. Louisiana, 508 U.S. 275 (1993) concerning erroneous reasonable doubt instructions as constituting structural error)).  In Hedgpeth v. Pulido, the Supreme Court cited to its previous decisions that various forms of instructional error were trial errors subject to harmless error analysis, including errors of omitting or misstating an element of the offense or erroneously shifting the burden of proof as to an element.  Hedgpeth, 555 U.S. 60-61.  To determine whether a petitioner proceeding pursuant to § 2254 suffered prejudice from such an instructional error, a federal court must determine whether the petitioner suffered actual prejudice by assessing whether, in light of the record as a whole, the error had a substantial and injurious effect or influence in determining the jury's verdict.  Hedgpeth, 555 U.S. at 62; Brecht v. Abrahamson, 507 U.S. 619, 638 (1993).

Thus, a habeas petitioner must show that the alleged instructional error had a substantial and injurious effect or influence in determining the jury's verdict.  Brecht v. Abrahamson, 507 U.S. 619, 637 (1993); Clark v. Brown, 450 F.3d at 905.  A failure to instruct on a defense theory has been held harmless under

26

the <u>Brecht</u> standard where other instructions permitted consideration

of the pertinent defensive matter.  <u>Beardslee v. Woodford</u>, 358 F.3d

560, 576 (9th Cir. 2004) (failure to instruct on manslaughter was

not error, but if it were error, it was harmless because it had no

substantial or injurious effect or influence in determining the

jury's verdict where numerous instructions allowed the jury to

consider the effect of threats upon the accused's mental state, both

as an absolute defense to all charges and as a factor in choosing

between first and second degree murder; the jury had been given more

than the simple all or nothing choice at issue in <u>Beck v. Alabama</u>,

447 U.S. 625, 638-46 (1980); and the jury's decision to reject

second degree murder meant that they would not have accepted the

lesser charge of manslaughter).

     Here, this Court is bound by the state court's conclusion that

the instruction concerning intoxication was generally correct under

state law that limits the jury's consideration of intoxication to

the issues of specific intent, wilfulness, deliberation, and

premeditation.  <u>Langford v. Day</u>, 110 F.3d at 1180.  However,

Petitioner's pretrial statement to law enforcement officers

constituted direct evidence of his state of mind at the time of the

offense and thus was admissible and relevant with respect to state

of mind.  It is logically possible that the intoxication instruction

in some manner circumscribed the jury's consideration of

Petitioner's intoxication as a factor bearing upon the weight to

assign to the evidence of Petitioner's pretrial statement.  However,

it is not reasonably probable that a rational juror would understand

the intoxication instruction to limit consideration of intoxication

with respect to the pretrial statement.  This is because

Petitioner's statement itself related directly to Petitioner's specific intent, wilfulness, deliberation, and premeditation at the time of the offense -- all matters within the scope of proper consideration of intoxication as set forth in the instruction given.

The closing arguments are consistent with this understanding. During argument, the prosecutor relied on Petitioner's statement that he wanted to kill the victim and thus aimed at the heart as showing intent to kill.  (LD 10, 3 RT 212-13, 222-24.)

The prosecutor detailed the evidence regarding Petitioner's intoxication throughout the night in question.  The prosecutor acknowledged that toxicological testimony put Petitioner's blood alcohol at a .22 to .28 at 9:30 p.m., the time of the party, which was two to three times the legal limit for driving.  Further, Petitioner was observed at the party acting in an intoxicated fashion by forcing a twelve-year-old to dance with him while he was falling down.  Much later upon encountering Petitioner at about 12:15 a.m., officers observed red and watery eyes, slurred speech, and swaying.

However, the prosecutor also emphasized all the evidence that was inconsistent with the defense that Petitioner's intoxication precluded a finding of intent to kill, wilfulness, deliberation, and premeditation.  The prosecutor argued that throughout that time, Petitioner's performance of a series of willed, complex acts reflected that although intoxicated, Petitioner nevertheless intended to kill and acted with wilfulness, deliberation, and premeditation.  The conduct relied on by the prosecutor included Petitioner's driving to the party, dancing, walking to the cooler and retrieving eight beers from it during the party, communicating

as he was being escorted out of the party, forming the intent as he was being ejected, going to his vehicle, opening it up, finding the knife, returning to the party after about a ten-minute interval, striking the victim twice suddenly and directly upon finding him, and injuring the victim twice.  (LD 10, 3 RT 212-21.)

The prosecutor argued that Petitioner continued to engage in complex, willed behaviors for a substantial time after the offense, including getting up from the floor after the scuffle, running off, managing to reach a bar a couple of blocks away, cleaning himself up after being told he was too bloody to enter the bar, returning to the bar, and calling police when he was not allowed back into the bar.  (Id. at 221-24, 244-47.)

The defense argued that voluntary intoxication was a defense to the attempted murder charge, and that the evidence thus showed an assault.  The defense argued that at 3:20 a.m., Petitioner's blood alcohol was .18; there was no evidence he drank after the party, so he must have had a blood alcohol level of .26 or .28 at the time of the stabbing.  The defense contended that one strong basis for discrediting Petitioner's statement was that he was still very intoxicated at the time of the statement.  (Id. at 234-43.)

Thus, the matter of Petitioner's intoxication was the subject of considerable evidence at the trial and was fully argued to the jury.  There was never any objection from either side to the scope of the closing argument concerning intoxication and Petitioner's statement.

There was also nothing in the jury deliberations that suggested the jury experienced any confusion concerning the two instructions.  (LD 10, 3RT 252-55.)  The jury was instructed to decide if the

29

Petitioner made the pretrial statement and how much importance to give to it in light of the other evidence.  The jury was also instructed to view the statement with caution unless recorded or written.  (Id. at 195-96.)

There is no indication that the instruction lessened the prosecution's burden of proof.  The instruction concerning evaluation of Petitioner's statement expressly reminded the jury that the prosecution had the burden of proving each element of the crime beyond a reasonable doubt.  (Id. at 196.)  The jury was correctly instructed on the presumption of innocence and the burden of proof beyond a reasonable doubt.  (Id. at 187, 190, 198-200, 206.)

In light of the record as a whole, the state court's decision that Petitioner did not suffer prejudice from the instructions was not contrary to, or an unreasonable application of, clearly established federal law.  The evidence did not require an inference that Petitioner's statement was likely to be untrue simply because he was still intoxicated to some extent at the time he made the statement.  Instead, there was testimony that intoxication might reduce inhibitions and thereby encourage admissions.  Further, the interrogating officers testified that during the interrogation, Petitioner was coherent and responded to the questions posed.

The narrative in Petitioner's statement was substantially consistent with the victim's account of the events at the party, which tends strongly to show that Petitioner was perceiving and recollecting rationally at the time of the offense.  The statement was incriminating, but it also contained the only evidence of self-defense because Petitioner told the officers that the victim had

lunged at him before Petitioner stabbed at the victim, had provoked Petitioner, and had agreed to fight him.   There was no apparent motive for the crime other than to respond to an insult to the Petitioner's manhood.   Petitioner's leaving the party to obtain a deadly weapon before physically confronting the victim supports an inference that Petitioner intended to kill the victim and acted wilfully and with deliberation and premeditation.

The jury considered Petitioner's intoxication when it determined that at the time of the stabbing, Petitioner harbored the intent to kill as well as the special mental state or states of premeditation and deliberation.   The jury necessarily determined that at that time, when the evidence reflected a much higher blood alcohol content, Petitioner's intoxication did not constitute a defense to criminal liability or otherwise excuse or mitigate his wrongful intent.   It is therefore unlikely that the jury would have concluded that hours later, when the blood alcohol content would have been much lower, Petitioner was too impaired even to recall and relate the events of the evening.

In sum, there is no showing that the instructions had any substantial effect or influence in determining the jury's verdict. No instructional error rendered the trial fundamentally unfair. Accordingly, Petitioner's claim of a violation of due process of law from the instructions on intoxication will be denied.

VI.   <u>Failure to Instruct on Attempted Voluntary Manslaughter</u>

Petitioner argues that the trial court had the duty to instruct on its own motion on attempted voluntary manslaughter based on a killing on a sudden quarrel or in the sudden heat of passion or provocation.   Although the trial court instructed on voluntary

manslaughter based on imperfect self-defense, Petitioner contends that the court was further required to instruct on the defense theory of the lesser included offense of attempted voluntary manslaughter based on a killing on a sudden quarrel or in the sudden heat of passion or provocation because such an instruction was supported by sufficient evidence for a jury to find in Petitioner's favor.  Petitioner contends that the absence of the proper instruction deprived him of his right to due process of law protected by the Fifth, Sixth, and Fourteenth Amendments to have the jury determine all factual issues relating to a charged offense.

A.   The State Court Decision

The pertinent portion of the last reasoned decision on the issue, which was the CCA's unpublished decision on direct appeal, is as follows:

**III. Voluntary Manslaughter as a Lesser Included Offense**

In addition to instructing the jury on attempted murder, the trial court instructed the jury on attempted voluntary manslaughter based on Huerra acting in imperfect self-defense. Huerra argues the trial court erred because it also should have instructed the jury that he would be guilty of attempted voluntary manslaughter if he acted in the heat of passion.

***Standard of Review***

"'It is settled that in criminal cases, even in the absence of a request, the trial court must instruct on the general principles of law relevant to the issues raised by the evidence. [Citations.] The general principles of law governing the case are those principles closely and openly connected with the facts before the court, and which are necessary for the jury's understanding of the case.' [Citation.]" (*People v. Sedeno* (1974) 10 Cal.3d 703, 715, overruled on other grounds in *People v. Breverman* (1998) 19 Cal.4th 142, 149 (*Breverman*).)

The general principles of law include instructions on lesser included offenses if there is a question about whether the evidence is sufficient to permit the jury to find all the elements of the charged offense. (*Breverman, supra*, 19 Cal.4th at pp. 154-155.) There is no obligation to instruct the jury on theories that do not have substantial evidentiary support. (*Id.* at p. 162.) "[T]he existence of 'any evidence, no matter how weak' will not justify instructions on a lesser included offense, but such instructions are required whenever evidence that the defendant is guilty only of the lesser offense is 'substantial enough to merit consideration' by the jury. [Citations.]" (*Ibid.*) Evidence is substantial if it would permit the jury to conclude the lesser offense was committed, but the greater offense was not. (*Ibid.*)

### *Analysis*

We begin with the question of whether there was sufficient evidence to require the trial court to instruct the jury on heat of passion voluntary manslaughter. "An intentional, unlawful homicide is 'upon a sudden quarrel or heat of passion' (§ 192[, subd.] (a)), and is thus voluntary manslaughter (*ibid.*), if the killer's reason was actually obscured as the result of a strong passion aroused by a 'provocation' sufficient to cause an '"ordinary [person] of average disposition ... to act rashly or without due deliberation and reflection, and from this passion rather than from judgment."' [Citations.] ' "[N]o specific type of provocation [is] required...."' [Citations]. Moreover, the passion aroused need not be anger or rage, but can be any ' " '[v]iolent, intense, high-wrought or enthusiastic emotion'" ' [citations] other than revenge [citation]. 'However, if sufficient time has elapsed between the provocation and the fatal blow for passion to subside and reason to return, the killing is not voluntary manslaughter....' [Citation.]" (*Breverman, supra*, 19 Cal.4th at p. 163.)

Huerra asserts that he was angry and upset when Huerta made fun of him and then asked him to leave the party. He argues that these factors were sufficient to require a heat of passion instruction. We disagree. While we accept, for the purposes of argument, that these factors caused Huerra to become upset, this was not the type of provocation that would be sufficient to cause an ordinary

33

person of average disposition to act rashly. Moreover, if these factors did cause Huerra to act impulsively, his actions would have been motivated by revenge for his injured pride, which is not a sufficient ground to support the heat of passion theory.

Also, Huerra's argument is not supported by the facts. Huerra did not lash out at Huerta when Huerta denigrated him and asked him to leave the party. Instead, Huerra left the party for at least 10 minutes to obtain a weapon. Huerra told officers that during this time he formed the intent to kill Huerta. These facts demonstrate that Huerta was not acting under a heat of passion. The voluntary manslaughter instruction based on actions committed while acting under a heat of passion was not supported by the evidence.

Even if we were to assume that the trial court should have instructed the jury on this theory, we would not reverse the judgment because Huerra cannot demonstrate any prejudice.

"In a noncapital case, the error in failing to instruct on a lesser included offense is reviewed for prejudice under *People v. Watson* (1956) 46 Cal.2d 818 which requires reversal of the conviction for the greater offense 'if, "after an examination of the entire cause, including the evidence" [citation], it appears "reasonably probable" the defendant would have obtained a more favorable outcome had the error not occurred.' [Citation.] Probability under *Watson* 'does not mean more likely than not, but merely a reasonable chance, more than an abstract possibility.' [Citation.]" (*People v. Racy* (2007) 148 Cal.App.4th 1327, 1335.)

We conclude there is no possibility that Huerra would have obtained a better result had the jury been instructed on the heat of passion theory of voluntary manslaughter. First, trial counsel did not argue that Huerra acted under a heat of passion, but instead argued that the crime committed was assault with a deadly weapon and not attempted murder.

Second, the jury not only found Huerra guilty of attempted murder but also found true the special circumstance that his actions were willful, deliberate, and premeditated. This finding precludes any possibility that the jury would

> have found Huerra was acting under a heat of passion
> because the two mental states are diametrically opposed.
> Also, the jury had two lesser options to convict Huerra—
> attempted murder without premeditation and deliberation
> and voluntary manslaughter based on imperfect self-
> defense. The jury rejected both of these theories. Logic
> compels the conclusion that the jury also would have
> rejected voluntary manslaughter based on actions committed
> during a heat of passion.

(LD 4, 14-16.)

B.  Analysis

A challenge to a jury instruction solely as an error under state law does not state a claim cognizable in federal habeas corpus proceedings.  Estelle v. McGuire, 502 U.S. at 71-72.  A claim that an instruction was deficient in comparison to a state model or that a trial judge incorrectly interpreted or applied state law governing jury instructions does not entitle one to relief under § 2254, which requires violation of the Constitution, laws, or treaties of the United States.  28 U.S.C. §§ 2254(a), 2241(c)(3).

This basic, limiting principle is applicable in the present case, where the object of Petitioner's claim of unfairness is the state court's decision upholding the trial court's failure to instruct on its own motion on a lesser included offense.  This court is bound by the state court's conclusion that the evidence was not substantial enough to warrant giving such an instruction under state law principles because any provocation shown by the evidence was legally insufficient, and a vengeful motive precluded a finding of heat of passion.  (LD 4, 14-15.)

Although the Supreme Court has held that the failure to instruct on lesser included offenses can constitute constitutional error in capital cases, Beck v. Alabama, 447 U.S. at 625, it has reserved decision on whether such an omission in non-capital cases constitutes constitutional error, id. at 638 n.7.  When the Supreme Court has expressly reserved consideration of an issue, there is no Supreme Court precedent creating clearly established federal law relating to a petitioner's habeas claim.  Alberni v. McDaniel, 458 F.3d 860, 864 (9th Cir. 2006).  In such a situation, a petitioner cannot rely on circuit authority, and there is no basis for relief pursuant to § 2254(d)(1) for an unreasonable application of clearly established federal law.  Alberni v. McDaniel, 458 F.3d at 864; Brewer v. Hall, 378 F.3d 952, 955-57 (9th Cir. 2004).

Accordingly, there is no clearly established federal law within the meaning of § 2254(d) concerning a state court's rejection of a claim that Sixth and Fourteenth Amendment rights in a non-capital case were violated by a failure to instruct on a lesser included offense.  Thus, such a claim is not cognizable in a proceeding pursuant to 28 U.S.C. § 2254 and is subject to dismissal.  Windham v. Merkle, 163 F.3d at 1092.

Further, the absence of the instruction did not result in any fundamental unfairness.  From the standpoint of a claim that the failure to instruct violated the right to instruction on the defense theory of the case, the record before the state court supports the

state court's conclusion that the defense did not mount a heat of passion or sudden quarrel defense.  The defense instead argued that intoxication rendered the attack a simple assault.  The evidence showed no sudden confrontation or quarrel; instead, Petitioner was escorted out of the party and then reappeared ten minutes later to stab the victim.

Finally, the state court's decision that Petitioner was not prejudiced was not contrary to, or an unreasonable application of, clearly established federal law.  There was strong direct and circumstantial evidence that Petitioner intended to kill the victim. The jury accepted this evidence and declined to conclude that Petitioner's clearly demonstrated intoxication negated the specific intent to kill or bolstered a defense of unreasonable or "imperfect" self-defense.  The jury concluded that Petitioner's offense of attempted murder was of the wilful, deliberate, and premeditated variety, which involved a state of mind inconsistent with the heat of passion under state law.  It thus was not possible that a trier of fact could have concluded that Petitioner acted in the heat of passion and thus was at most culpable of attempted voluntary manslaughter.

In sum, Petitioner has not shown that he suffered any fundamental unfairness or that the omission had any substantial or injurious effect or influence in determining the jury's verdict. Accordingly, the Court will deny Petitioner's claim concerning the

37

failure to instruct on attempted voluntary manslaughter based on a sudden quarrel or the heat of passion.

   VII.  Certificate of Appealability

   Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the Court of Appeals from the final order in a habeas proceeding in which the detention complained of arises out of process issued by a state court.  28 U.S.C. § 2253(c)(1)(A); Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).  A district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Rule 11(a) of the Rules Governing Section 2254 Cases.

   A certificate of appealability may issue only if the applicant makes a substantial showing of the denial of a constitutional right. § 2253(c)(2).  Under this standard, a petitioner must show that reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.  Miller-El v. Cockrell, 537 U.S. at 336 (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)).  A certificate should issue if the Petitioner shows that jurists of reason would find it debatable whether: (1) the petition states a valid claim of the denial of a constitutional right, and (2) the district court was correct in any procedural ruling.  Slack v. McDaniel, 529 U.S. 473, 483-84 (2000).

   In determining this issue, a court conducts an overview of the claims in the habeas petition, generally assesses their merits, and determines whether the resolution was debatable among jurists of reason or wrong.  Id.  An applicant must show more than an absence of frivolity or the existence of mere good faith; however, the

applicant need not show that the appeal will succeed.  <u>Miller-El v. Cockrell</u>, 537 U.S. at 338.

Here, it does not appear that reasonable jurists could debate whether the petition should have been resolved in a different manner.  Petitioner has not made a substantial showing of the denial of a constitutional right.  Accordingly, the Court will decline to issue a certificate of appealability.

VIII.  <u>Disposition</u>

Accordingly, it is ORDERED that:

1)  The petition for writ of habeas corpus is DENIED; and

2)  The Clerk is DIRECTED to enter judgment for Respondent; and

3)  The Court DECLINES to issue a certificate of appealability.

IT IS SO ORDERED.

Dated:   **July 27, 2014**                              **/s/ Sheila K. Oberto**
                                         UNITED STATES MAGISTRATE JUDGE

39